# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AHLEY YANG HER,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | Case No. 1:22-cv-00516-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION<br>FOR SUMMARY JUDGMENT, GRANTING<br>DEFENDANT'S CROSS-MOTION FOR<br>SUMMARY JUDGMENT, AND DENYING<br>PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 16, 17) |

## I.

## INTRODUCTION

Ahley Yang Her ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' cross-motions for summary judgment, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for the award of benefits or further proceedings, arguing: 1) the Administrative Law Judge erred in failing to consider the established impairment of Complex Regional Pain Syndrome, resulting in an

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (See ECF Nos. 7, 9, 10.)

incomplete residual functional capacity assessment; (2) the Administrative Law Judge's assessed mental residual functional capacity is unsupported because she failed to include concrete limitations from opinions she found persuasive; and (3) the Administrative Law Judge improperly rejected the opinion of Dr. Kano.  For the reasons explained herein, Plaintiff's motion for summary judgment shall be denied, Defendant's cross-motion for summary judgment shall be granted, and Plaintiff's social security appeal shall thus be denied.

## II.

## BACKGROUND

### A.    Procedural History

On March 8, 2018, Plaintiff filed a Title II application for a period of disability insurance benefits, and on March 28, 2018, Plaintiff filed a Title XVI application for supplemental security income benefits, each alleging a period of disability beginning on April 10, 2015.  (AR 349, 358.)   Plaintiff's applications were initially denied on June 26, 2018, and denied upon reconsideration on December 7, 2018.  (AR 177, 185.)  Plaintiff requested and received a hearing before Administrative Law Judge Erin Justice (the "ALJ").  (AR 192.)  Plaintiff appeared for a hearing before the ALJ on April 7, 2020.  (AR 66-87.)  On April 29, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 145-170.)  The Appeals Council remanded the claim for further proceedings.  (AR 171-76.)  An additional hearing was held on March 22, 2021.  (AR 45-65.)  Thereafter, the ALJ issued an unfavorable decision dated April 14, 2021. (AR 12-44).  On September 20, 2021, the Appeals Council denied Plaintiff's request for review. (AR 6-11.)

On April 29, 2022, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On August 1, 2022, Defendant filed the administrative record ("AR") in this action.  (ECF No. 11.) Following multiple extensions of the briefing schedule, on November 30, 2022, Plaintiff filed an opening brief in support of summary judgment.  (Pl.'s Opening Br. ("Br."), ECF No. 16.)  On January 17, 2023, Defendant filed an opposition brief and motion for cross-summary judgment. (Def.'s Opp'n ("Opp'n"), ECF No. 17.)  Plaintiff did not file a reply brief.

/ / /

**B.      The ALJ's Findings of Fact and Conclusions of Law**

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, April 14, 2021:

- The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

- The claimant has not engaged in substantial gainful activity since April 10, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

- The claimant has the following severe impairments: carpal tunnel syndrome; disorders of the spine, muscle and ligaments; depression; and, anxiety (20 CFR 404.1520(c) and 416.920(c)).

- The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

- The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional and specific functional restrictions: can occasionally lift up to 15 pounds occasionally and 10 pounds frequently, but can only lift a maximum of 5 pounds with the right dominant hand; can stand and/or walk for about 6 hours and sit for about 6 hours in an 8-hour day; can frequently climb ladders, ropes, scaffolds, ramps and stairs; can frequently stoop, kneel and crawl; can occasionally crouch; can frequently handle and finger bilaterally; requires a 5-minute break after 15 minutes of typing or data entry type work; can understand, remember and perform simple work; needs a 5-minute break every 2 hours; and, can tolerate occasional changes in the workplace.

- The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

- The claimant was born on December 31, 1978 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR

404.1563 and 416.963).

- The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

- Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

- The claimant has not been under a disability, as defined in the Social Security Act, from April 10, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 17-32.)

### III.

### LEGAL STANDARD

#### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1  20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ

2  as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's

3  physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049

4  (9th Cir. 2001).

5      At step five, the burden shifts to the Commissioner, who must then show that there are a

6  significant number of jobs in the national economy that the claimant can perform given her RFC,

7  age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d

8  1111, 1114 (9th Cir. 2006).   To do this, the ALJ can use either the Medical Vocational

9  Guidelines ("grids"), or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2;

10  Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

11  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility,

12  resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at

13  1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

14      **B.    Standard of Review**

15      Congress has provided that an individual may obtain judicial review of any final decision

16  of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).

17  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised

18  by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir.

19  2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court

20  must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42

21  U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is

22  relevant evidence which, considering the record as a whole, a reasonable person might accept as

23  adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir.

24  2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995));

25  see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence

26  standard to the deferential clearly-erroneous standard).   "[T]he threshold for such evidentiary

27  sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means

28  more than a scintilla, but less than a preponderance; it is an extremely deferential standard."

Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff presents three challenges: (A) the ALJ erred in failing to consider the established impairment of Complex Regional Pain Syndrome, resulting in an incomplete residual functional capacity assessment; (B) the ALJ's assessed mental residual functional capacity is unsupported because she failed to include concrete limitations from opinions she found persuasive; and (C) the ALJ improperly rejected the opinion of Dr. Kano.

### A.    Any Error at Step Two is Harmless as the ALJ Considered the Complex Regional Pain Syndrome in the RFC Determination

At Step Two, the ALJ found that Plaintiff suffered from the following severe impairments: carpal tunnel syndrome; disorders of the spine, muscle and ligaments; depression; and anxiety. (AR 18.) Plaintiff argues the ALJ erred in failing to consider the established

1 impairment of Complex Regional Pain Syndrome, resulting in an incomplete residual functional

2 capacity assessment.

3      1.     <u>General Legal Standards</u>

4     "An impairment or combination of impairments can be found 'not severe' only if the

5 evidence establishes a slight abnormality that has 'no more than a minimal effect on an

6 individual[']s ability to work.' " <u>Smolen</u>, 80 F.3d at 1290 (citations omitted). Step two is a "de

7 minimis screening devise to dispose of groundless claims." <u>Id.</u>, 80 F.3d at 1290. An ALJ can

8 only find that claimant's impairments or combination of impairments are not severe when his

9 conclusion is clearly established by medical evidence. <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th

10 Cir. 2005) (quoting S.S.R. 85-28). In considering an impairment or combination of impairments,

11 the ALJ must consider the claimant's subjective symptoms in determining their severity.

12 <u>Smolen</u>, 80 F.3d at 1290.

13     Symptoms are not medically determinable physical impairments and cannot by

14 themselves establish the existence of an impairment. <u>Titles II & XVI: Symptoms, Medically</u>

15 <u>Determinable Physical & Mental Impairments, & Exertional & Nonexertional Limitations</u>, SSR

16 96-4P (S.S.A. July 2, 1996). In order to find a claimant disabled, there must be medical signs

17 and laboratory findings demonstrating the existence of a medically determinable ailment. <u>Id.</u>

18 "[R]egardless of how many symptoms an individual alleges, or how genuine the individual's

19 complaints may appear to be, the existence of a medically determinable physical or mental

20 impairment cannot be established in the absence of objective medical abnormalities; i.e., medical

21 signs and laboratory findings. . . . In claims in which there are no medical signs or laboratory

22 findings to substantiate the existence of a medically determinable physical or mental impairment,

23 the individual must be found not disabled at step 2 of the sequential evaluation process." <u>Id.</u>

24     Any error in failing to find impairment severe at step two is harmless where the ALJ

25 considers the limitations posed by the impairment in the step four analysis. <u>Lewis v. Astrue</u>, 498

26 F.3d 909, 911 (9th Cir. 2007); <u>see also</u> <u>Buck v. Berryhill</u>, 869 F.3d 1040, 1049 (9th Cir. 2017)

27 (Where the ALJ ultimately decided step two in the claimant's favor, she "could not possibly have

28 been prejudiced.").

1    2.    Plaintiff's Arguments

2    Plaintiff argues the ALJ made no finding as to whether the established diagnosis of

3    Complex Regional Pain Syndrome ("CRPS") was severe or non-severe; and nowhere in her

4    determination does the ALJ address the diagnosis, symptomology, treatment, response to

5    treatment or limiting effects of CRPS.  (Br. 22-23.)  Acknowledging the harmless error standard,

6    Lewis, 498 F.3d at 911, Plaintiff states "the ALJ did not discuss the impairment of CRPS or the

7    effects of pain and limitations stemming therefrom at Step Two or virtually anywhere else in the

8    determination."  (Br. 23.)  Plaintiff thus argues it is evident the ALJ did not consider this

9    impairment singly or in combination with other impairments or any limitations resulting from the

10   impairment singly or in combination in the RFC analysis.  (Br. 24.)  Plaintiff asserts that had the

11   ALJ properly considered all of her impairments she would have found that Plaintiff's RFC

12   contained greater restrictions, as for example, while the ALJ found that Plaintiff could use her

13   hands for 15 minutes, then rest for five minutes (AR 20), there is no basis for this opinion as no

14   doctor opined that a period of rest of five minutes would accommodate Plaintiff's well-

15   documented hand pain, now attributable to CRPS.  Plaintiff submits that had the ALJ properly

16   considered the limitations resulting from CRPS, instead of those merely attributed to carpal

17   tunnel syndrome, she would have found that Plaintiff's capacity fell far below the handling and

18   grasping tolerances to which the VE testified.

19   3.    The Courts Finds any Error at Step Two would be Harmless

20   In the RFC analysis portion of the ALJ's opinion, the ALJ acknowledged the diagnosis of

21   CRPS as contemporaneous with other records, notably as to the bilateral upper extremities, and

22   noted that Plaintiff was prescribed medication for the condition, before discussing other

23   treatments pertaining to Plaintiff's hand/arm impairments.  (AR 25-26.)  Initially, the ALJ

24   reviewed Plaintiff's history of carpal tunnel syndrome, and other records relating to complaints

25   of the upper extremities, before reaching the time period pertaining to the CRPS discussion:

26   In terms of the medical evidence, a treatment report from April
     2015, the month the claimant alleges her disability began, she
27   complained of pain in both arms/hands, present over the past
     several years and increasing (Exhibit 1F, p. 1). She related doing a
28   lot of repetitive work in her job throughout the day. EMG testing

showed only very mild right carpal tunnel syndrome, and the claimant was thought to have "excellent" strength on manual muscle testing of both extremities, with no detectable focal motor deficits. Her symptoms were initially treated with recommended use of wrist splints and physical therapy, which the claimant reported in October 2015 had improved her symptoms (Exhibit 3F, p. 2) . . .

. . . The record shows that the claimant did not significantly improve, however, with conservative treatment measures regarding her right upper extremity complaints, and in February 2017 underwent a right carpal tunnel release surgery (Exhibit 10F, p. 3). She subsequently underwent recommended physical therapy and in April 2017 was noted to have a well healed incision with her subjectively complaints of sharp pain and paresthesias "gone" (Exhibit 10F, p. 1). Paul Caviale, M.D., the claimant's orthopedic hand surgeon, opined that she could return to modified work on April 19, 2017, with no lifting over 5 pounds using the right hand.

Later evidence shows ongoing bilateral wrist pain and decreased functional mobility, for which the claimant underwent additional physical therapy in June and July 2017 (Exhibit 13F). An examination in August 2017 showed intact range of motion with no deformity or swelling in the fingers, and full wrist strength on the left (Exhibit 14F, p. 5). The claimant's right grip strength was slightly reduced to 4/5. It was noted she had recently been started on Gabapentin and Cymbalta for unrelated diagnoses. The claimant's bilateral upper extremity symptoms persisted into early 2018 . . .

. . . In April 2018, the claimant received treatment, including chronic pain management, for bilateral wrist tendonitis, bilateral epicondylitis, and generalized anxiety disorder (Exhibit 21F, pp. 4-6). Clinically, she presented as alert, not in acute distress, and had normal affect and mentation. She was prescribed medication and continued with use of a wrist brace.

(AR 23-24.)  The ALJ then discussed Plaintiff's CRPS diagnosis in her hands, recognized that treatment notes from early 2020 showed that Plaintiff continued to complain of the condition of her right hand but also showing no acute distress or mental symptoms stemming from this condition, acknowledged contemporaneous evidence of Plaintiff's CRPS diagnosis around this time, and also discussed a March 2020 record, in which Plaintiff was encouraged to repeat a stellate ganglion block, as she would "greatly benefit" from this, and was recommended for hand/physical therapy:

The claimant continued with rather normal mental status findings in late 2019/early 2020, including the observation that she appeared in no acute distress despite ongoing bilateral upper

extremity complaints (Exhibit 37F, p. 5).   Contemporaneous evidence shows she was diagnosed with complex regional pain syndrome (type I) of the bilateral upper limbs around this time, for which she was prescribed medication. In March 2020, the claimant was also encouraged to pursue a repeat stellate ganglion block, as she would "greatly benefit" from this. She was recommended hand/physical therapy, especially in the period after stellate ganglion block where there is improved functionality and pain relief (Exhibit 37F, pp. 5-10). Notably, the claimant was also alert and oriented to person, place and time. She had "normal" mood, affect, behavior, judgment, and thought content.

(AR 25-26.)[5]  Then, after discussing some interim records relating to back pain in 2020, the ALJ specifically "noted that other recent evidence reflects continued bilateral upper extremity symptoms, diagnosed and treated primarily as CRPS."  (AR 26.)  The ALJ recognized that in "October 2020, she complained mostly of pain the right wrist near the thumb  . . . had intact distal pulse and somewhat reduced bilateral grip strength (4/5) . . . [and] [o]nly temporary relief was reported with a recent ganglion block."  (AR 26.)

Based on the above, the Court agrees with Defendant that there is no merit to Plaintiff's assertion that the ALJ did not address the CRPS, its symptoms, treatments and responses thereto, or its allegedly limiting effects.  20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").  As Defendant highlights, importantly, Plaintiff routinely demonstrated full to near full grip strength in both hands both before and after her June 2019 CRPS diagnosis, and in contrast to Plaintiff's claim that her depression depended on her pain level, Plaintiff was assessed as being alert and oriented and had normal mood, affect, behavior, judgment, and thought content, even as she complained of pain due to CRPS.  (AR 26, 81, 2079, 2082.)  This further confirms that it was not harmful error that the ALJ did not mention CRPS by name at step two, because the ALJ considered the objective effects from this condition in assessing the RFC.

Plaintiff did not submit any reply briefing addressing the specific discussion of CRPS in

---

[5]  In the previous opinion issued by the same ALJ, the ALJ also noted essentially the same in the timeline of records. (AR 156.)

the ALJ's RFC analysis highlighted in opposition, despite stating in the initial briefing that there was virtually no discussion of the condition.  The Court agrees that consistent with Plaintiff's CRPS (which primarily manifested in her right hand) - and findings of full to near full grip strength, full range of motion in her wrists, fingers, and thumbs, and normal motor strength in both upper extremities - the ALJ assessed an RFC in which Plaintiff could only occasionally lift up to 15 pounds occasionally and 10 pounds frequently and at most, five pounds with her right hand.  (See AR 20, 76, 2367, 1706 (Plaintiff "denie[d] any problems on the left hand [and] most of her problems [were] mainly on the right hand and where it [was] the greatest out of proportion").)

Finally, as noted above, Plaintiff argues there is no basis for the ALJ's finding Plaintiff could use her hands for 15 minutes, then rest for five minutes (AR 20), proffering no doctor opined that a period of rest of five minutes would accommodate Plaintiff's well-documented hand pain, now attributable to CRPS.  Defendant responds the ALJ's further limitation to frequent handling and fingering with both hands and requiring a 5-minute break after 15 minutes of typing or data entry type work, actually mirrored Dr. Abelow's medical opinion.

While not an *identical* reflection, Plaintiff has mounted no reply, and the Court disagrees with Plaintiff's assertion that no doctor opined as to this type of limitation utilized by the ALJ. The Court finds the opinion, which was specifically based in part on CRPS, largely mirrors the RFC determination.  Specifically, Dr. Abelow issued an opinion on October 17, 2019, that noted "[t]here has been clinical evidence of complex regional pain syndrome."  (AR 1876.)  Dr. Abelow concluded that from an orthopedic standpoint, Plaintiff "currently experiences a disability referable to her right and left elbows, forearms, wrists, and hands which is a disability precluding heavy lifting greater than 10 to 15 pounds except on an occasional basis, and repetitive pushing, pulling, grasping, pinching, holding, and torquing [and] should not type or do data entry for more than 10 to 15 minutes without the ability to rest ad lib."  (AR 1877.)

For all of the above reasons, the Court finds any error at omitting CRPS from step two to be harmless, as the ALJ properly accounted for the functional limitations in the RFC determination.  See Lewis, 498 F.3d at 911; Robert B. v. Comm'r of Soc. Sec., No. C21-5772-

MLP, 2022 WL 2357006, at *2 (W.D. Wash. June 30, 2022) ("An ALJ's failure to properly consider an impairment at step two may be harmless where the ALJ considered the functional limitations caused by that impairment later in the decision . . . the ALJ's finding that some of Plaintiff's impairments were non-severe is, at most, harmless error at step two because the ALJ found Plaintiff to have some severe impairments and continued on to later steps."); Buck, 869 F.3d at 1049 ("The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not.") (emphasis in original); Teague v. Astrue, No. CV 09-8848 JCG, 2010 WL 5094252, at *5 (C.D. Cal. Dec. 7, 2010) ("Second, even assuming the ALJ erred in overlooking to list prostatitis at step two, any error was harmless because the ALJ, in fact, considered Plaintiff's prostatitis while assessing his limitations," by noting "Plaintiff was 'treated for chronic prostatitis' and 'underwent a cystoscopy and bladder wash in September 2006[,]' . . . [and by] further not[ing] that Plaintiff's 'symptoms included chronic pelvic discomfort, post void fullness and straining to urinate.' "); c.f. Davidson v. Comm'r of Soc. Sec., No. 1:19-CV-00099, 2020 WL 616281, at *3 (E.D. Cal. Feb. 10, 2020) ("Here, however, after clearing Step 2, the ALJ considered only claimant's physical impairments, truncating all discussion of mental impairments at Step 2 [and] [t]hus, the ALJ's subsequent analysis did not render harmless the Step 2 error."); Loader v. Berryhill, 722 F. App'x 653, 654–55 (9th Cir. 2018) ("The ALJ did err, however, by failing to consider the limitations imposed by Loader's depression when assessing his residual functional capacity (RFC), and thereafter when examining the vocational expert.").

**B.      The Court Finds the ALJ's Mental RFC Determination Proper**

Plaintiff argues the ALJ's RFC determination did not account for all concrete limitations contained in Dr. Grewal's medical opinion, which the ALJ found persuasive.

1.      General Legal Standards

A claimant's RFC is "the most [the claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).  The RFC is "based on all the relevant evidence in [the] case record."  20 C.F.R. § 416.945(a)(1).  "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable

impairments and the claimant's subjective experiences of pain, § 416.920(e)."  Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014).  At step four the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work.  Garrison, 759 F.3d at 1011.  "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record."  Thomas, 278 F.3d at 956.  When applying for disability benefits, the claimant has the duty to prove that she is disabled.  42 U.S.C. § 423(c)(5)(A).  The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).

> 2.  Plaintiff's Arguments

As the ALJ found the opinion of Dr. Grewal to be "largely persuasive," Plaintiff argues the ALJ erred by failing to account for concrete limitations assessed by Dr. Grewal in the mental RFC.  Plaintiff proffers that in addition to the requirement that the RFC account for all limitations assessed, the ALJ has a duty to account for "concrete work restrictions" assessed by doctors to which the ALJ accorded persuasive weight, and specifically, where there are concrete restrictions assessed by a medical provider, and the ALJ accords weight to the opinion, the ALJ must account for the restrictions beyond merely limiting Plaintiff to "simple work."  Harrell v. Kijakazi, No. 1:20-CV-00614-GSA, 2021 WL 4429416, at *6 (E.D. Cal. Sept. 27, 2021) ("As for the unpublished district court case law (which is not controlling, but is more factually on point) it is split but tends to favor the view that a restriction to simple/routine tasks with limited public contact does not account for the moderate limitations Dr. Stafford identified in interacting with supervisors and peers, handling work related stressors, maintaining regular attendance, and completing a normal workweek without interruption." (citing, e.g., Macias v. Saul, No. 1:19-CV-01187-BAM, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021))).  Plaintiff cites Macias stating the opinion collected cases and held that a limitation to simple/routine tasks does not account for attendance limitations.  2021 WL 856423, at *6; see also Wascovich v. Saul, No. 2:18-CV-659-EFB, 2019 WL 4572084, at *4 (E.D. Cal. Sept. 20, 2019) ("Others cases have found that where

1   the ALJ accepts the medical assessment of moderate limitations, those limitations must be

2   accounted for in the RFC."); Berenisia Madrigal v. Saul, No. 1:18-CV-01129-SKO, 2020 WL

3   58289, at *6 (E.D. Cal. Jan. 6, 2020) ("The cases on which Defendant relies in support of this

4   argument are distinguishable because they concern whether it was harmless error that the ALJ

5   failed to address moderate limitations in social functioning and adaptation where the RFC

6   included a limitation to simple, repetitive tasks.").

7        Here as to this matter, Plaintiff notes the ALJ ruled Plaintiff was limited to "simple

8   work," "can tolerate occasional changes in the workplace," and found Plaintiff "needs a five

9   minute break every two hours."  (AR 20.)  Plaintiff argues the five minute break finding is not in

10  any way an accommodation, as VE's routinely testify that an ordinary workday consists of at

11  least 15 minute breaks every two hours.  Dr. Gerwal opined Plaintiff, among other mental

12  limitations, was moderately impaired in her ability to "maintain regular attendance, and complete

13  a normal workday/workweek without interruptions from a psychiatric condition," as well as in

14  her "ability to deal with the usual stress encountered in the workplace."  (AR 1530.)  Plaintiff

15  argues that while the ALJ accounted for stressors by limiting her only to occasional changes, the

16  ALJ failed to account for the concrete restriction of moderate limitations in the ability to

17  complete a normal workday and workweek.  Plaintiff maintains such assessed restrictions cannot

18  not be accurately accounted for by merely limiting Plaintiff to so-called "simple" work, and

19  because the ALJ limited Plaintiff to simple work, the RFC failed to account for concrete work

20  restrictions and is unsupported.

21        3.    The Court Finds No Error Warranting Remand

22        The Social Security regulations define "moderate limitation" as a "fair" ability to

23  function "independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. § Pt.

24  404, Subpt. P, App. 1, § 12.00F(2); see also Donna J. v. Comm'r of Soc. Sec., No. 3:18-CV-

25  05296-TLF, 2019 WL 4200661, at *8 (W.D. Wash. Sept. 4, 2019); F.B. v. Kijakazi, No. 21-

26  01628-JCS, 2022 WL 4544202, at *15 (N.D. Cal. Sept. 28, 2022).

27        State agency psychological consultant Dr. D'Adamo found Plaintiff had a moderate

28  limitation in her ability to concentrate, persist, or maintain pace ("CPP").  (AR 134.)  In this

1    regard, Defendant proffers psychological consultants rate a claimant's ability to complete a

2    normal workday and workweek without interruptions from psychologically based symptoms, as

3    a subset of the overall ability to sustain concentration and persistence.  Here for example, Dr.

4    D'Adamo, under the heading of "Rate the individual's sustained concentration and persistence

5    limitations," found Plaintiff was moderately limited in the "ability to perform activities within a

6    schedule, maintain regular attendance, and be punctual within customary tolerances"; and in the

7    "ability to complete a normal workday and workweek without interruptions from

8    psychologically based symptoms and to perform at a consistent pace without an unreasonable

9    number and length of rest periods."  (AR 140.)

10          As noted above, Dr. Grewal, the focus of Plaintiff's challenge, opined Plaintiff had a

11   moderate limitation in the ability "to maintain regular attendance, and complete a normal

12   workday/workweek without interruptions."  (AR 1530.)  Based on the two opinions, Defendant

13   suggests therefore, both Drs. Grewal and D'Adamo opined Plaintiff had a moderate limitation in

14   this subset area of CPP.  Defendant then argues State physician Dr. D'Adamo translated what

15   this moderate limitation meant in terms of Plaintiff's residual functional capacity for work-

16   related tasks, explaining that Plaintiff remained best suited for tasks that could be completed

17   easily and quickly and mostly at her own pace, even with this moderate limitation.  (AR 140.)

18          Specifically, Dr. D'Adamo, under the subheading "Explain in narrative form the

19   sustained concentration and persistence capacities and/or limitations," wrote: "[b]est suited for

20   tasks which complete easily and quickly and mostly at her own pace," and that "[i]n this context

21   she can maintain CPP and complete a normal workday."  (AR 140.)  Defendant thus submits that

22   in other words, those restrictions accounted for the moderate limitation in Plaintiff's ability to

23   complete an uninterrupted workday that both Drs. Grewal and D'Adamo found.  See 20 C.F.R. §

24   404.1513a(b)(2) ("State agency medical or psychological consultants are highly qualified and

25   experts in Social Security disability evaluation").  The Court finds this to be a reasonable

26   interpretation.  See Ford, 950 F.3d at 1154 (if the evidence "is susceptible to more than one

27   rational interpretation, it is the ALJ's conclusion that must be upheld." (quoting Burch, 400 F.3d

28   at 679)).

1    Significantly, the ALJ found Dr. D'Adamo's recommended restrictions to be largely

2  persuasive under the applicable regulations.  (AR 29.)[6]  Defendant argues Plaintiff's failure to

3  discuss - much less challenge - this finding, is a concession that Dr. D'Adamo's recommended

4  RFC (which translated the moderate limitation in completing an uninterrupted workday, into

5  concrete functional limitations), was persuasive.  (AR 29)  Plaintiff has not mounted any reply to

6  these arguments, and the Court finds that based on the arguments presented and lack of a reply, it

7  is at least a waiver of any challenge to the ALJ's weighing of Dr. D'Adamo's opinion.  In this

8  regard, the "opinions of non-treating or non-examining physicians may also serve as substantial

9  evidence when the opinions are consistent with independent clinical findings or other evidence in

10 the record."  See Thomas, 278 F.3d at 957.

11    The Court agrees with Defendant that this is significant because the ALJ's RFC limiting

12 Plaintiff to understanding, remembering and performing simple work, with requisite five-minute

13 breaks every two hours, was in line with the restrictions that Dr. D'Adamo recommended, and

14 that Plaintiff has not specifically challenged, nor replied regarding.  Based on the above record,

15 the Court does not find the cases cited by Plaintiff convincing as applied to these facts.  See

16 Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) ("The ALJ translated Stubbs–

17 Danielson's condition, including the pace and mental limitations, into the only concrete

18 restrictions available to him—Dr. Eather's recommended restriction to 'simple tasks[,]' [which]

19 does not . . . constitute a rejection of Dr. McCollum's opinion [as] Dr. Eather's assessment is

20 consistent with Dr. McCollum's 2005 MRFCA, which found Stubbs–Danielson is 'not

21 significantly limited' in her ability to 'carry out very short simple instructions,' 'maintain

22 attention and concentration for extended periods,' and 'sustain an ordinary routine without

23 special supervision[,]' [and] [a]s two of our sister circuits have recognized, an ALJ's assessment

24 of a claimant adequately captures restrictions related to concentration, persistence, or pace where

25 the assessment is consistent with restrictions identified in the medical testimony.").  This

26 conclusion is in line with the previous holdings of this Court.  See Clark v. Comm'r of Soc. Sec.,

27 
_____
28 [6] The Court further explains the legal standards for weighing medical opinion evidence below in the following
challenge to the weighing of Dr. Kano's opinion.

No. 1:16-CV-00437-SAB, 2017 WL 2671080, at *11 (E.D. Cal. June 21, 2017) ("Moderate limitations in concentration, persistence and pace are sufficiently accounted for by limiting a plaintiff to simple repetitive tasks . . . [i]n Stubbs-Danielson, the Ninth Circuit found that limiting the plaintiff to simple, routine, repetitive work properly incorporated moderate limitations related to pace, concentration, attention, and adaption."); Perez v. Comm'r of Soc. Sec., No. 1:19-CV-01235-SAB, 2020 WL 4430656, at *8 (E.D. Cal. July 31, 2020) ("Contrary to Plaintiff's assertion, Stubbs-Danielson does not stand for the proposition that finding a claimant to have moderate limitations at step two would belie a finding that the claimant can perform more than simple repetitive work."); Jones v. Comm'r of Soc. Sec., No. 1:13-CV-01135-SAB, 2014 WL 2957454, at *11 (E.D. Cal. June 30, 2014) ("However, Stubbs–Danielson made clear that moderate limitations are captured in the limitation to simple repetitive tasks where the assessment is consistent with the restrictions identified in the medical record."); Neri v. Comm'r of Soc. Sec., No. 1:21-CV-01235-SAB, 2022 WL 16856160, at *9 n.12 (E.D. Cal. Nov. 10, 2022) ("To this point, the Court additionally notes the Ninth Circuit has repeatedly held that a limitation to unskilled work, *i.e.*, 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time', 20 C.F.R. §§ 404.1568; 416.968, adequately encompasses a claimant's 'moderate' mental RFC limitations." (citing Thomas, 278 F.3d at 953, 955, 958; Stubbs-Danielson, 539 F.3d at 1169; Sabin v. Astrue, 337 Fed. App'x. 617, 620–21 (9th Cir. 2009))); Vang v. Comm'r of Soc. Sec., No. 1:21-CV-00488-SAB, 2022 WL 17812859, at *14 (E.D. Cal. Dec. 19, 2022) ("The Ninth Circuit has determined limitations to such "simple" work sufficiently addresses "moderate" mental limitations.").

The Court rests its decision on the reasons above, but additional lines of argument from Defendant provides additional weight behind the Court's finding in favor of Defendant, particularly given none of the additional arguments were addressed by Plaintiff in reply.[7]

---

[7] Defendant also argues Plaintiff further glosses over the fact the ALJ specifically accounted for Drs. Grewal and D'Adamo's opinions that Plaintiff was moderately limited in completing an uninterrupted workday, by providing for regular five-minute interruptions in that workday. Defendant frames Plaintiff's contention that vocational experts routinely testify that an ordinary workday consists of regular breaks as unsupported and a red herring because regardless of what may be customary or not, the fact remains that the RFC explicitly provided for regular interruptions and the vocational expert testified that Plaintiff could still perform other work in the national economy, even with this limitation. (AR 83-84.) Defendant also argues Plaintiff attempts to recast the moderate limitation in

Accordingly, for the above explained reasons, the Court does not find the ALJ erred in RFC determination did not account for all concrete limitations contained in Dr. Grewal's medical opinion, which the ALJ found persuasive.

### C.   Whether the ALJ Erred in Weighing Dr. Kano's Opinion

#### 1.   Legal Standards

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence.   See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.   Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."   20 C.F.R. §§ 404.1520c(a); 416.920c(a).   Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.   See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).   As recently acknowledged by the Ninth Circuit,

---

completing an uninterrupted workday as a concrete restriction, but it was not, as in determining a capacity to work, terms like moderate are less helpful in determining an RFC because they do not describe how well or how often a person can do a certain task as: an ALJ should use language that denotes how often a person can perform a task, 20 C.F.R. § 404.1545(a) (an RFC is the most a claimant can do despite her limitations and is based on all the relevant evidence in the case record); an RFC identifies a capacity to work, where terms such as occasional, frequent, or constant explain the frequency a person can perform a certain activity, SSR 83-10 (defining the terms "occasional" and "frequent" for an RFC); and similarly, terms like simple instructions are also helpful when determining RFC, as they describe the type of work a claimant has the capacity to perform.   See 20 C.F.R. § 404.1568(a) (noting unskilled jobs require little or no judgment to do simple duties that can be learned on the job in a short period of time); Thomas, 278 F.3d at 957-58 ("[i]f a job is unskilled, the tasks are very simple"); Yasuda v. Comm'r of Soc. Sec., 473 Fed.Appx. 787, 788 (9th Cir. 2012) (in assessing the RFC for "simple, unskilled work," the ALJ "did not err in relying on Dr. Fair's and Dr. Gallucci's translations of [claimant's] limitations (including the moderate limitations in areas of sustained concentration and persistence identified by Dr. House) into concrete work restrictions" (citing Stubbs–Danielson, 539 F.3d at 1174)).   Finally, Defendant proffers in any event, the Ninth Circuit has held that "moderate" limitations in several categories of functioning, including completing a normal workday and workweek without interruption from psychologically-based symptoms, is not evidence of a severe impairment, much less a disabling one.   See Hoopai v. Astrue, 499 F.3d 1071, 1076-77 (9th Cir. 2007) (ALJ committed no error by not finding a severe mental impairment or presenting the "moderate" limitations to a vocational expert).

1   this means the 2017 revised Social Security regulations abrogate prior precedents requiring an

2   ALJ to provide "clear and convincing reasons" to reject the opinion of a treating physician where

3   uncontradicted by other evidence, or otherwise to provide "specific and legitimate reasons

4   supported by substantial evidence in the record, " where contradictory evidence is present.

5   Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

6          Instead, "[w]hen a medical source provides one or more medical opinions or prior

7   administrative medical findings, [the ALJ] will consider those medical opinions or prior

8   administrative medical findings from that medical source together using" the following factors:

9   (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5)

10  other factors that "tend to support or contradict a medical opinion or prior administrative medical

11  finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in

12  evaluating the persuasiveness of medical opinions and prior administrative medical findings are

13  supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability

14  factor, the regulation provides that the "more relevant the objective medical evidence and

15  supporting explanations presented by a medical source are to support his or her medical

16  opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).

17  Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence

18  from other medical sources and nonmedical sources in the claim, the more persuasive the

19  medical opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

20         Accordingly, the ALJ must explain in her decision how persuasive she finds a medical

21  opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. §

22  404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the

23  [other remaining factors]," except when deciding among differing yet equally persuasive

24  opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).  Further, the ALJ is

25  "not required to articulate how [she] considered evidence from nonmedical sources."  20 C.F.R.

26  § 404.1520c(d).  Nonetheless, even under the new regulatory framework, the Court still must

27  determine whether the ALJ adequately explained how she considered the supportability and

28  consistency factors relative to medical opinions and whether the reasons were free from legal

1  error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS,

2  2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

3        2.    Dr. Kano's Opinion and the ALJ's Weighing

4     The ALJ summarized and weighed Dr. Kano's opinion as follows:

> Charlie Kano, M.D. also submitted various medical source
> statements regarding the claimant's physical limitations (Exhibits
> 32F, 35F, 57F, 62F, 75F). In December 2018, Dr. Kano opined the
> claimant could sit for about 4 hours and stand and/or walk for less
> than 2 hours in an 8 -hour workday (Exhibit 32F). He opined that
> she could rarely lift and carry less than 10 pounds, and found that
> she could never twist, stoop, crouch, or climb ladders, and could
> rarely climb stairs. She also had limitations reaching with the
> bilateral extremities. By November 2019, Dr. Kano opined the
> claimant could never twist, stoop, crouch, climb stairs, or climb
> ladders. She could never use her hands, fingers, or arms.
> Additionally, she would be off task for 25% or more of the
> workday. He offered similar opinions in September 2020 and again
> in January 2021, also finding the claimant could sit for less than 2
> hours and stand and/or walk for less than 2 hours in an 8-hour day,
> that she needs to shift positions at will, and would require 4
> unscheduled 5 -minute breaks per day in addition to regular breaks.
> And per Dr. Kano, the claimant could not spend any amount of
> time during the workday using her hands for fingers. These
> opinions are not supported or consistent with the longitudinal
> evidence of record. Indeed, Dr. Kano did not cite specific objective
> findings to substantiate such extreme limitations. To the contrary,
> the evidence cited by and supportive of Dr. Bugg's assessment is
> much more persuasive in establishing the claimant's physical work
> capabilities. Dr. Kano's opinions are thus considered less
> persuasive as they are overly limiting and unsubstantiated by
> objective medical findings over time (See Exhibits 4E; 20F, pp.
> 13-17; 21F, pp. 4-6; 22F, p. 3; 25F, pp. 6-7; 26F, pp. 4-11; 27F,
> pp. 4-5; 29F, pp. 2-6; 33F, pp. 8-13; 36F, pp. 17, 19-29; 37F, p. 5;
> 49F, pp. 8-10; 58F, p. 1; 59F, p. 1; 60F, pp. 5-10).

21  (AR 28.)

22        3.    Plaintiff's Arguments

23     Acknowledging the relevant new regulatory standard, Plaintiff argues the record

24  contained multiple conflicting opinions, but the ALJ rejected the opinions favorable to Plaintiff's

25  claim without proper consideration and without supporting her conclusions by substantial

26  evidence.   Plaintiff contends the ALJ's reasoning in rejecting Dr. Kano's opinion was

27  conclusory.   For example, where the ALJ states that the opinion was "unsubstantiated by

28  objective findings over time," Plaintiff highlights the citations are to the same evidence string the

1 ALJ cites when discounting Dr. Abelow's findings.  In addition to this lack of attention to that

2 detail, Plaintiff argues the ALJ fails to explain, in either instance, how the cited material

3 conflicted with Dr. Kano's findings, and indeed, much of the cited evidence actually supports Dr.

4 Kano's assessment that Plaintiff ability to use her hands is greatly restricted.  For example: the

5 ALJ cites to Ex. 20F at 13-17, where this record contains the finding that Plaintiff's condition is

6 a "highly complex case" of bilateral carpal tunnel syndrome (AR 1233); the ALJ cites to Ex. 21F

7 at 4-5, where Plaintiff complains of shooting pains in the hands and arms, but there is no

8 physical examination to dispute the doctor's opinion (AR 1244); the ALJ cites to Ex. 25F at 6-7,

9 where Plaintiff again reports pain and swelling, hallmarks of CRPS, and the exam shows

10 diminished sensation to all five fingers on the right hand, as well as positive Grind test of the left

11 thumb and positive Durkin's sign of the left hand, and it was recommended that Plaintiff undergo

12 epidural steroid injection and consult with a neurosurgeon (AR 1436-37); the ALJ cites to Ex.

13 37F at 4-5, where Plaintiff reports two previous ganglion injections failed to resolve her hand

14 pain, and the physician confirms the diagnosis of CRPS (AR 1601); and finally, the ALJ cites

15 Ex. 60F at 5-10, where again it is noted Plaintiff had no lasting improvement post-carpal tunnel

16 release, that she had swelling in the right hand, that right hand was weakened by contraction; and

17 that CRPS "significantly impacts her functioning" (AR 2082-83).

18 　　　　Further, Plaintiff suggests many of the ALJ's citations are not related to any impairment

19 alleged or found to be severe, as the citations to Exs. 49F at 8-10, 58F at 1, and 59F, each pertain

20 to Plaintiff's routine cardiology visits and include no testing of the musculoskeletal system, let

21 alone Plaintiff's ability to grasp, handle and finger.  (AR 1808, 2070, 2072.)  Plaintiff notes the

22 ALJ also cites to evidence where there was either no examination at all, or only an examination

23 of the lumbar spine: Exs. 26F at 4-11, 27F at 4-5, and 36F at 17. (AR 1442-1449, 1449-1450,

24 1583.)  Plaintiff submits this thus leaves only an ankle x-ray (Ex. 22F at 3 (AR 1373)), and the

25 findings of the consultative examiner, Dr. Van Kirk, who reviewed no evidence and was the only

26 physician of record to find no manipulative limitations.  (Exs. 29F at 2-6, 33F at 8-13 (AR 1516-

27 1512, 1546-1551)).

28 　　　　In light of the fact that the above evidence is the only evidence upon which the ALJ

1    relied to reject Dr. Kano's opinion, Plaintiff maintains the ALJ failed to meet her burden to

2    explain how the cited evidence contradicted Dr. Kano's opinion that Plaintiff's ability to grasp,

3    handle and manipulate objects was contradicted by "objective findings over time."

4           4.    The Court Finds the ALJ Properly Weighed Dr. Kano's Opinion under the

5                Revised Regulations

6        In part, Dr. Kano opined that Plaintiff could never to rarely lift/carry less than 10 pounds

7    (*e.g.*, 1-5% of the workday), and *never* grasp or turn with *either* hand.  (AR 1536-37, 1565, 2068,

8    2103, 2763).  Based on the Court's review of the records, the Court finds substantial evidence

9    supports the ALJ's finding that Dr. Kano did not cite specific objective findings to substantiate

10   the opined limitations.  (AR 28, 1535-38, 1563-66, 2066-69, 2101-04, 2761-64.)

11       As to consistency, the ALJ explained that the evidence cited by and supportive of State

12   agency medical consultant G. Bugg, M.D.'s assessment, was more persuasive in establishing

13   Plaintiff's physical capabilities.  (AR 28.)  Based on a review of the record and opinion as a

14   whole, the Court also finds the ALJ reasonably found Dr. Kano's opinions to be less persuasive

15   as overly limiting and unsubstantiated by objective medical findings over time.  20 C.F.R. §

16   404.1520c(b)(2), (c)(1), (2); Woods, 32 F.4th at 792.

17       Specifically, as for the string of evidence Plaintiff argues the ALJ failed to adequately

18   address or explain, the Court finds the ALJ sufficiently explained her reasoning as to the

19   longitudinal record, Dr. Kano's records, and Dr. Bugg's records/opinion.  Plaintiff's highlighting

20   above of certain attributes of the records, do not change the analysis.  See Ford, 950 F.3d at 1154

21   (if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion

22   that must be upheld." (quoting Burch, 400 F.3d at 679)).

23       As Defendant argues, the ALJ explained the significance of the evidence earlier in the

24   opinion.  For example, as for Ex. 20F at 15-7 (AR 1232-34), the first exhibit cited in the string of

25   evidence after the Plaintiff's own function report, detailed a physical examination showing

26   normal gait and full motor strength, as stated by the ALJ earlier in the opinion.  (AR 22.)  There,

27   the ALJ contrasted such findings with Plaintiff's symptoms, such as her claimed inability to walk

28   for longer than 30 minutes, and found that they were inconsistent.  (AR 21, 22, 51, 414.)

As for Plaintiff's suggestion the ALJ erred in citing the same records used to assess Dr. Abelow's opinion, the ALJ explained that this evidence – the same records cited by and supportive of Dr. Bugg's assessment – was much more persuasive in establishing Plaintiff's physical work capabilities.  In assessing Dr. Bugg's opinion for example, before citing these records, the ALJ explained that the opinion was largely consistent with the longitudinal evidence of record, which reflects reports of chronic pain and muscle spasms, along with clinical findings of "mild" disc bulging, "minimal" soft tissue swelling in the right ankle, reduced grip strength (4/5), positive straight leg raise testing, periods of normal gait, "full range of motion without pain or difficulty" in the hips, knees, ankles, shoulders, elbows, wrists, and fingers, full motor strength (5/5) in the bilateral upper and lower extremities, "good" rehabilitation potential, and positive response to treatment in the form of acupuncture, hot baths, medication management, TENS unit, physical therapy, and injections."  (AR 26-27.)  Therefore, the Court finds the ALJ adequately explained the significance of the records cited in the string of evidence, as related to weighing the opinions of Dr. Abelow, Dr. Brugg, and Dr. Kano.  See Lewis, 236 F.3d at 513 ("The ALJ thus discussed and evaluated evidence supporting his conclusion . . . Marcia simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.' " (citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990))); Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not . . . require ALJs to draft dissertations when denying benefits.").

The Court also finds Plaintiff's argument that the records cited by the ALJ were unrelated to her hand impairments, is not persuasive.  Plaintiff also claimed disability based on other conditions (e.g., spinal disorders and neck and shoulder pain) and these records related to those claims, as the ALJ explained.  (AR 22-26.)  The Court agrees with Defendant that the ALJ reasonably found that these records were inconsistent with Dr. Kano's limitations that were presumably based on such complaints.  (AR 1535 (listing degenerative disc cervical spine, low back pain, leg weakness); AR 1536-37 (Plaintiff could only stand/walk for less than two hours and sit for four hours); AR 2072 (exam show Plaintiff's gait and extremities to be normal).)

As another example of a record cited in the string of evidence previously addressed by

the ALJ, the second citation after the Plaintiff's function report, Ex. 21F, while Plaintiff highlights the record noted Plaintiff's subjective "shooting pain" in her wrist and hand, the ALJ previously noted the following about the record: "In April 2018, the claimant received treatment, including chronic pain management, for bilateral wrist tendonitis, bilateral epicondylitis, and generalized anxiety disorder . . . [c]linically, she presented as alert, not in acute distress, and had normal affect and mentation [and] was prescribed medication and continued with use of a wrist brace." (AR 24, citing Ex. 21F at 4-6, AR 1244.)  The Court agrees that a reasonable conclusion is that such findings are inconsistent with Dr. Kano's opined need to be off task more than 25% of the time due to lack of attention and concentration.

As another example from the string of evidence, the May 2018 record in which Plaintiff complained of pain and swelling with some abnormal findings, nevertheless showed on physical examination that Plaintiff's grip strength remained 4 out of 5.  (Ex. 25F at 6-7, AR 1436-37.) The Court agrees this stands in contrast to Dr. Kano's opinion that Plaintiff could never grasp with either hand and only lift/carry 10 pounds for 1-5% of the day.

Finally, while Plaintiff suggests Dr. Van Kirk reviewed no evidence, the record references review of the March 19, 2018 MRI, and the October 17, 2016 x-ray. (AR 1516.)  The record also references Plaintiff's reporting of current medications and prior surgical history. After a consultative exam, Dr. Van Kirk found normal motor strength, full strength in her arms and legs (5/5), including in her grip, and the Court finds the ALJ reasonably relied on the exam findings as support for finding Dr. Kano's opined limitations contradicted.  (AR 1516-1521.)

Based on the parties' arguments, and the Court's review of the relevant records in relation to the ALJ's opinion as a whole, the Court concludes the ALJ's application of the supportability and consistency factors as applied to Dr. Kano's opinion is based on substantial evidence from the record, and free from error warranting remand.  Woods, 32 F.4th at 792; Ford, 950 F.3d at 1155.

/ / /

/ / /

/ / /

**V.**

**CONCLUSION AND ORDER**

In conclusion, the Court rejects the Plaintiff's challenges and finds no error warranting remand of this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is DENIED, Defendant's cross-motion for summary judgment is GRANTED, and Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Ahley Yang Her.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **June 8, 2023**

UNITED STATES MAGISTRATE JUDGE